UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Beck f/k/a David Wayne Vanderbeck,                Civil No. 99-826 (RHK/FLN)

        Plaintiff,

        v.                                        **REPORT AND RECOMMENDATION**

Erik Skon, David Crist,
and Dr. Christopher Ceman,

        Defendants.

_____

Stephen Rathke, for Plaintiff.

Kari Jo Ferguson, Assistant Minnesota Attorney General,
for Defendants Erik Skon and David Crist.

Mark Hardy, for Defendant Dr. Christopher Ceman.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 26, 2005, on Defendants' Motions for Summary Judgment [#280; #287]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Defendants' Motions be granted.

## I. FINDINGS OF FACT

### A. Introduction and Procedural Posture

This case arises from events that occurred while Plaintiff was incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-STW"). Plaintiff brought suit in June 1999, alleging that the Defendants violated his Eighth Amendment rights when they denied him adequate medical care for his hernia condition. Later that year, this Court granted Defendants' motions for summary judgment. In 2001, the United States Court of Appeals for the Eighth Circuit reversed the

grant of summary judgment in part.   The Court remanded for this Court to determine whether Defendants conditioned Plaintiff's hernia surgery on his release of all prospective liability.   The case is now before the Court on Defendants' Second Motions for Summary Judgment.   Defendants argue that Plaintiff has failed to establish that Defendants required him to sign release of liability forms to receive hernia surgery.

### B.     Plaintiff's Hernia Condition

Plaintiff began suffering a hernia in 1997, while in the custody of the Minnesota Department of Corrections ("MDOC").   Pl. Aff. ¶ 2.   Defendant Dr. Christopher Ceman, a physician contracted by Correctional Medical Services ("CMS") to provide medical services to inmates, treated Plaintiff at MCF-STW from January 1999 to December 2000.   Ceman Aff.   In August 1999, Dr. Ceman asked Plaintiff if he would consent to surgery to repair his hernia if CMS approved the procedure.   See id. at ¶ 7.   Plaintiff replied that he would agree to surgery only if he did not have to sign an informed consent form and if he did not have to be placed under general anesthesia during the surgery.   Due to Plaintiff's refusal to consent, and the fact that his hernia was still reducible, Dr. Ceman did not seek approval for the surgery at that time.   Id.

Plaintiff saw Dr. Ceman again on September 20, 1999, for hernia treatment.   Id. at ¶ 8. Plaintiff informed Dr. Ceman that he would refuse to sign an informed consent form for surgery. Dr. Ceman did not seek approval for or schedule surgery.

### C.     Defendants' 1999 Motion for Summary Judgment

On June 7, 1999, Plaintiff filed a Complaint alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution when they denied him adequate medical treatment for his hernia condition.   See Complaint at 7-8.   Plaintiff named Dr.

Ceman, and Erik Skon, and David Crist, employees of the MDOC, as Defendants.

On August 30, 1999, Defendants Skon and Crist moved for summary judgment [#22]. Defendant Dr. Ceman moved for summary judgment on December 19, 1999 [#44]. In his Memorandums in Opposition to the Motions, submitted on September 7, 1999 [#26] and December 22, 1999 [#46], Plaintiff alleged that he was unable to obtain a hernia repair because he was unwilling to sign a form releasing the medical providers from all liability. Ferguson Aff. Ex. A. Plaintiff alleged that both medical institutions to which Defendants sent Plaintiff for treatment required such a waiver. See id. He further alleged that Defendants told him that unless he waived his right to litigate any resulting liability, he could not be treated at any medical institution with which MCF-STW or MDOC contracted unless he paid for the surgery himself. See id.

Magistrate Judge Mason, in a Report and Recommendation dated December 30, 1999, recommended that Defendants' Motion for Summary Judgment be granted [#47]. Judge Mason reviewed Plaintiff's medical records and found that Plaintiff had refused to sign the consent forms for his hernia surgery. Judge Mason concluded that Plaintiff had, therefore, refused the medical treatment he claimed the Defendants denied him and that his claims should be dismissed. District Judge Frank adopted the Report and Recommendation on February 11, 2000 [#52]. Plaintiff appealed the Order adopting the Report and Recommendation in March 2000 [#56].

On June 7, 2001, the United States Court of Appeals for the Eighth Circuit affirmed the District Court's decision in part. Beck v. Skon, 253 F.3d 330, 334 (8th Cir. 2001). The Court found that prison officials had offered Plaintiff accommodations designed to alleviate some of his pain, and that they had "conscientiously attempted to meet [Plaintiff's] medical needs." Id. at 333-34. The Court concluded that, in general, the care Plaintiff had received for his back injury and hernia was

reasonable, and that Plaintiff had "failed to present a triable issue of fact evidencing a violation of his Eighth Amendment rights"  Id. at 334.

The Court of Appeals declined, however, to affirm the grant summary judgment on the issue of whether Defendants had denied Plaintiff hernia surgery based on his refusal to sign a release of liability.   The court noted that Plaintiff, in his Memorandum in Opposition to the Motion, "steadfastly maintained that in order for his hernia to be repaired, the prison conditioned the procedure on [his] release of all future liability that might arise from the surgery."  Id.  The Court, "troubled by the absence of consent forms in the summary judgment record," held that if "prison officials...conditioned a necessary medical procedure on [Plaintiff's] release of liability, their action could establish a deliberate indifference to [his] Eighth Amendment right to basic medical care." Id. (citations omitted).   The Court, therefore, concluded there was a "genuine issue of material fact...whether the surgical consent forms were releases of prospective liability, as [Plaintiff] contend[ed], or merely forms authorizing treatment."  Id. at 332.  The Court remanded for this Court to determine whether in fact Plaintiff's surgery had been conditioned on a release of liability:

> [Plaintiff] has had no opportunity to challenge the authenticity of [the release] forms or to depose the affiants about them.  Whether [Plaintiff] will in fact be able to prove that defendants conditioned surgery on a total release of liability is another matter, but for purposes of this appeal, our concern is otherwise.   Based upon the insufficiency of the record and the apparent conflicting sworn statements, summary judgment on this issue was premature.

> Id. at 334.

### D.    Defendants' Motions to Supplement Record with the Informed Consent Forms

After oral argument at the Eighth Circuit, Defendants Skon and Crist made motions to supplement the record to include evidence that Plaintiff had not been required to sign a release of

liability as a condition to receiving hernia surgery.  See Dr. Ceman's Mem. p. 7, citing Hardy Aff.

Ex. B.  The Affidavits attached in support of their motion establish that at all times relevant to

Plaintiff's claim, all hernia surgeries for inmates within the MDOC would have been performed

through the HealthEast Care System ("Health East").  See Hardy Aff. Ex. C.  The Affidavits, and

the HealthEast consent forms attached as exhibits thereto, establish that none of the consent forms

used by HealthEast contained any provision that would have required Plaintiff to release all potential

liability claims as a condition to undergoing surgery.  See id. at Ex. D.

> **E.      Plaintiff's Treatment After 1999[1]**

The record shows that in January 2000, Plaintiff continued to inquire of the medical services

staff and Dr. Ceman about the release of liability forms required for surgery.  On January 12, 2000,

Plaintiff informed Dr. Ceman that he was willing to sign the releases due to his increasing pain.  See

Pl. Aff. ¶ 7; Connor Aff. ¶ 7 and Ex. C.  About a week later, Plaintiff added a statement to the

informed consent form stating he refused to waive liability and sent copies to Connor and Crist.  See

Pl. Aff. and Connor Aff.  Neither Connor nor Crist responded.   In May 2000, MDOC Health

Services Director Nanette Schroeder wrote to Plaintiff, informing him that he must sign all the

"appropriate release and permission forms" before he could obtain surgery.  Plaintiff submits that

he continued to believe Defendants required him to sign a release of liability before they would

permit surgery.  Pl. Aff. ¶ 9.  During the next year, Plaintiff received no follow-up care regarding

his hernia.

In June 2001, Plaintiff discussed his hernia with Dr. Sultan Michael.  Plaintiff expressed his

---

[1]

Although the treatment Plaintiff received after Defendants moved for summary judgment in 1999 appears largely irrelevant to the Court's decision on Defendants' instant motions, Plaintiff bases much of his argument on events that occurred after 1999.  Accordingly, the Court has included the facts that Plaintiff claims are relevant.

concern about signing a release of liability.  Ferguson Aff.  Dr. Michael did not comment on

Plaintiff's concerns.  Pl. Aff.  In August 2001, Plaintiff told Dr. Ayodele Ayedun that he wished to

proceed with hernia surgery and that he would sign the documents needed.  No documents were ever

sent to Plaintiff to be signed.  Id. at ¶¶ 11-12.

On May 22, 2002, Plaintiff was evaluated by Psychological Services Director Steve Allen,

who opined that Plaintiff likely did not understand the documents he was being asked to sign.  See

Rathke Aff. Ex. G.  Dr. Allen suggested that it could have been Plaintiff's suspicious personality that

prevented him from proceeding with surgery.

On October 3, 2002, Plaintiff had surgery to repair his right inguinal hernia at HealthEast's

St. Joseph's Hospital in St. Paul, Minnesota.  Connor Aff. at ¶ 9.  On that day, he signed

HealthEast's "Consent for Surgery, Special Procedures and Blood Transfusions" form.  See Hardy

Aff., Ex. I.

### F.    Defendants' Instant Summary Judgment Motion

Defendants have moved for summary judgment on the current record.  They argue that, on

remand, the Eighth Circuit directed this Court to consider only whether the surgical consent forms

presented to Plaintiff required release of liability, or were instead only authorizations for treatment.

Defendants represent that MCF-STW, CMS and the MDOC do not have, and have never had, a

policy requiring an offender to sign a form releasing any party of liability as a prerequisite to

receiving medical care of any kind.  They argue that Plaintiff has provided no evidence that the

forms presented to him were releases of prospective liability, and that they are, therefore, entitled

to summary judgment.

Plaintiff argues that summary judgment should be denied because the prison officials allowed

Plaintiff to believe that he was required to sign a release of liability to obtain surgery, even though they knew that no such release was required.  He argues that the evidence, when viewed in the most favorable light, creates a genuine issue of material fact that prevents the Court from granting summary judgment.

## II.  CONCLUSIONS OF LAW

### A.      Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and  the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party.  Id. at 255.  Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue.  See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

-7-

**B.      Plaintiff Has Produced No Evidence that Defendants Required Plaintiff to Sign a Form Releasing Liability to Have Hernia Surgery**

As set forth above, the Eighth Circuit remanded Plaintiff's case for this Court to determine only one well-defined issue: "whether the surgical consent forms were releases of prospective liability...or merely forms authorizing treatment." Beck, 253 F.3d at 332.  To avoid summary judgment, Plaintiff must prove that the Defendants required him to sign a release of liability.  The Court finds that Plaintiff has not produced evidence that Defendants required him to release all liability before having hernia surgery.

In his responsive pleading, Plaintiff submitted various documents to support his allegations, including a January 1, 2000, letter he wrote to Maureen Connor; a May 24, 2000, letter he received from Nanette Schroeder; a June 12, 2001, medical note from Dr. Michael; and a May 22, 2002, report by Dr. Allen and comments Dr. Allen made at a September 10, 2002, discipline hearing. See Rathke Aff. Exs. A, D, G; Ferguson Aff. Exs. B, I-K.  None of the documents establish that the Defendants conditioned the surgery on Plaintiff's release of liability.  In the 2000 letter to Connor, Plaintiff stated that he was willing to sign a "release," but that he would not "sign away all liabilities."  The letter from Schroeder states only that Plaintiff had to "sign the appropriate release and permission forms before any reputable surgeon [would] perform an invasive procedure."  The medical notes demonstrate only that Plaintiff was confused about the forms he was required to sign. None of the identified documents is a release of liabilities, and none of the documents, or the factual instances described therein, support his claim that a release of liabilities was required.

In contrast to Plaintiff's submissions, Defendants submitted the actual consent-for-surgery forms Plaintiff would have been required to have signed in 1999 to have hernia surgery.  Ferguson Aff. Exs. C-E.  The consent forms required Plaintiff to authorize the treatment of his condition and

the administration of anesthesia and drugs, and to certify that the procedures and risks thereof had been adequately explained to him.  See e.g., id. at Ex. D.  The forms are not general releases of liability for anything that might have gone wrong during the operation.

Defendants represent that MCF-STW, CMS and the MDOC do not have, and have never had, a policy requiring an offender to sign a form releasing any party of liability as a prerequisite to receiving medical care of any kind.  See Skon and Crist's Mem. p. 3; Ceman's Mem. p. 11.  If an inmate is to receive surgical care from an outside facility, that facility requires the inmate to sign a consent-for-surgery form and an informed consent for anesthesia form.  The forms do not require the release of prospective liability.  See Skon and Crist's Mem. p. 3, citing Ferguson Aff.; Second Connor Aff.

Plaintiff appears to concede that the Defendants in fact did not require a liability release.  He argues instead that from 1999 through 2002 he was confused about the content of the consent-for-surgery forms.  He claims that his confusion resulted in a delay of his hernia surgery, and that Defendants' failure to resolve his confusion about the language contained in the forms constituted a violation of his Eighth Amendment rights.  See Pl. Mem. p. 3-5.  He argues that a denial of medical needs can be more than an explicit denial; that denial can also be the disregard of a substantial risk of harm.  See id. at p. 2, citing Coleman v. Rahija, 114 F.3d 778 (8th Cir. 1997).  Plaintiff claims that Defendants had knowledge that his hernia condition posed a substantial risk of harm to his health, yet failed to act, despite Plaintiff's mounting confusion about consent and release of liability.

The Court finds Plaintiff's arguments unavailing.  Pursuant to the Eighth Circuit's instructions, the question before this Court is whether " [D]efendants conditioned the surgery on a

total release of liability." <u>Beck</u>, 253 F.3d at 334.  The issue is not whether Defendants failed to resolve Plaintiff's confusion regarding the consent form.

The Court concludes that Plaintiff has failed to establish that there is any genuine issue of material fact regarding whether Defendants required a full release of prospective liability before Plaintiff could obtain medical treatment.  The HealthEast consent to surgery and anesthesia forms that were in use in 1999, and those that were ultimately provided to Plaintiff in January 2002, do not include any language that could be construed as a waiver of prospective liability.  <u>See</u> Hardy Aff. Ex. I.  It is also clear that Plaintiff repeatedly refused the surgery to repair his hernia, and that at no time did Defendants refuse Plaintiff medical treatment.  That  Defendants might have done more to explain the required forms to Plaintiff does not amount to a violation of the Eighth Amendment. Defendants' Motions for Summary Judgment should be granted, and the claim against them dismissed.

## III.  RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motions for Summary Judgment [#280; #287] be **GRANTED.**

DATED: December 22, 2005                              s/ *Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 12, 2006,** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten

pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 12, 2006** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.